HALLA et al. v. COWDEN et al.[†]

(Circuit Court of Appeals, Ninth Circuit. May 3, 1909.)

No. 1,624.

1. DEEDS (§ 47*)—EXECUTION—ATTESTATION—COMPETENCY OF WITNESSES.

Under Civ. Code Alaska, § 82 (31 Stat. 503), which requires deeds to be "executed in the presence of two witnesses," such witnesses need not be disinterested persons; the ancient rules so requiring being based on the fact that, under the law at that time, interested persons were not competent to testify in court to such execution in case of any controversy re-

specting it, which law has been generally abrogated, and is not in force in Alaska.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 106; Dec. Dig. § 47.*]

2. MINES AND MINERALS (§ 64*)—LEASES—VALIDITY OF ASSIGNMENT.

An assignment of a lease of mining property in Alaska, required by Code Civ. Proc. Alaska, § 1046 (31 Stat. 493), to be executed with the formality of a deed, is not invalid because the subscribing witnesses thereto were members of the partnership which was the assignee.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 64.*]

3. MINES AND MINERALS (§ 38*)—MINING CLAIM—EJECTMENT—QUESTIONS FOR JURY.

The pleadings in an action of ejectment for a mining claim *held* to present issues of fact which under the evidence were properly submitted to the jury.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 38.*]

In Error to the District Court of the United States for the Second Division of the District of Alaska.

Elwood Bruner and J. Allison Bruner (P. M. Bruner, Edward Lande, and John P. Allen, of counsel), for plaintiffs in error.

Charles E. Shepard (Thomas R. Shepard, of counsel), for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. This was an action in ejectment brought by the defendants in error against the plaintiffs in error in the District Court for the District of Alaska, Second Division, to recover possession of a certain placer mining claim in the Cape Nome mining district described as the "Golden Bull Claim." Plaintiffs in the court below (defendants in error) based their right of action upon a lease executed by the defendants (plaintiffs in error) on February 26, 1906, wherein they leased the mining claim in controversy to F. R. Cowden, one of the plaintiffs, for a term of years beginning on February 26, 1906, and extending until July 1, 1909. By an assignment dated March 6, 1906, the plaintiffs, as copartners doing a mining business under the firm name and style of the Golden Bull Mining Company, succeeded to the interest of F. R. Cowden. It was provided, among other things, in the lease, that the lessees should enter upon the mining claim described immediately after the execution of the lease and work and mine the same steadily and continuously during the term thereof during the mining season, and it was further provided that any failure to work and mine the same for a period of 15 consecutive days was to be considered at the option of the lessors a violation of the agreement.

The defendants in their answer allege that the plaintiffs claim to be entitled to the possession of the premises by reason of the lease set forth in the complaint; that as one of the conditions of the lease plaintiffs covenanted and agreed to enter upon the said mining claim immediately after the execution of the lease, and to work and mine the claim steadily and continuously during the term of the lease during mining season, and any failure to work and mine said claim for 15

consecutive days to be considered at the option of the lessors a violation of the lease; that plaintiffs had failed, refused, and neglected to prosecute the work continuously, and for a period of much more than 15 days had failed and neglected to do any work whatsoever upon said mining claim; that in May, 1906, and after the plaintiffs had full knowledge of the adverse claim of the owners and lessees of the Bon Voyage placer mining claim which claim was in conflict with the Golden Bull mining claim, the plaintiffs abandoned the claim, and surrendered the same to the possession of adverse claimants; that W. J. Rogers, one of the plaintiffs, in violation of the covenants of the lease and in fraud of the rights of the defendants, located a portion of said claim in his own name, and adversely to the rights of the defendants, and that at no time had the plaintiffs gone into the possession and mined and operated the undisputed portion of the claim, or had they attempted to do so as required by the terms, covenants, and conditions of the lease. It was further alleged as a defense to the action that plaintiffs had surrendered the lease to the defendants and abandoned said mining claim, and ceased to prosecute work thereon for a period of more than 15 days, and since said surrender had ceased to work thereon, and forfeited thereby all rights if any they had which may have been secured by them by said lease; that, by the terms of said lease, it was provided that, upon the violation by the lessee therein or any person under him of any covenant contained in said lease, the term of said lease should at the option of the lessors expire, and the same and the said premises with the appurtenances become forfeit to the lessors; that the defendants exercised said option and retook possession of said ground, and mined and operated the same until enjoined by order of the court. In their reply plaintiffs alleged that in the month of October, 1906, the owners of a certain placer mining claim known as the Bon Voyage claim were in possession of ground being a part of the Golden Bull claim mentioned in the complaint; that this ground was in conflict between the Golden Bull claim and the Bon Voyage claim; that defendants being desirous of bringing an action against the owners of the Bon Voyage claim and their privies to recover their possession of the ground in dispute, plaintiffs' company executed a release to the defendants in order that they might bring an action of ejectment against the parties in possession of the disputed ground; that they might be able upon the trial of such action to show that they were entitled to the possession of said disputed ground, and have the right of possession thereto; that, to enable the defendants to bring such action, the plaintiffs executed the release which was placed in the hands of one T. M. Reed, an agent and attorney for the defendants, not as an absolute delivery of the release to the said Reed or to the defendants, but solely and expressly upon the condition that the release should be held by the said Reed undelivered until the defendants should have executed an agreement with the plaintiffs to make a lease of the Golden Bull claim to the plaintiffs for a term of two years from and after the conclusion of the contemplated litigation; that the defendants, after having first agreed to do as aforesaid, receded from their agreement, and wrongfully obtained and took from the possession of said Reed the lease and release thereof, and still re-

tain possession of the same; that the defendants had not executed, and they refused to execute, an agreement on their part for a new release; that, shortly after having so wrongfully obtained possession of said lease and release, the defendants without notice to the plaintiffs that they had receded from their agreement, and without making any demand upon the plaintiffs that they required plaintiffs to comply with the terms of said lease, entered into the possession of said leased premises, and they have thence retained possession thereof, and excluded the plaintiffs therefrom. It is further alleged in plaintiffs' reply that none of the time from the date when the plaintiffs temporarily suspended work on the leased premises in the month of May, 1906, until the time when said Reed on behalf of the defendants obtained from the plaintiffs the execution and deposit with him of said release and deposit of said lease, was comprised in the mining season for mining said leased premises according to the then customary and approved methods and seasons of working such grounds as that included in the leased premises. The case was tried before the court and jury, and upon the conclusion of the evidence it was submitted under instructions. The jury returned a verdict in favor of the plaintiffs.

It is assigned as error that the court overruled defendants' objection to the introduction in evidence of the assignment of T. R. Cowden, the lessee of the mining claim, to the Golden Bull Mining Company, on the ground that the assignment had not been executed with the formalities required by section 82 of the Civil Code of Alaska (31 Stat. 503). That section provides as follows:

"Deeds executed within the district of lands or any interest in lands therein shall be executed in the presence of two witnesses, who shall subscribe their names to the same as such: and the persons executing such deeds may acknowledge the execution thereof before any judge, clerk of the district court, notary public, or commissioner within the district, and the officer taking such acknowledgment shall indorse thereon a certificate of the acknowledgment thereof and the true date of making the same, under his hand."

Section 1046 of the Alaska Code of Civil Procedure, relating to evidence (31 Stat. 493), provides as follows:

"No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing subscribed by the party creating, transferring or declaring the same, or his lawful agent under written authority, and executed with such formalities as are required by law."

The objection is that the assignment was not executed in the presence of two disinterested witnesses. The assignment was acknowledged before a notary public and executed in the presence of two witnesses, but these two witnesses were copartners, of the assignor in the Golden Bull Mining Company. It is therefore contended that they were not qualified to witness the execution of the assignment. This objection is supported by the case of Winsted Savings Bank, etc., v. Spencer, 26 Conn. 195, decided in 1857. In that case the execution of a mortgage deed to the Winsted Savings Bank, a private moneyed corporation, was attested by a witness who at the time of the execution of the deed was a stockholder in the corporation. The witness was al-

so the magistrate who took the acknowledgment of the deed. The court referring to the statute of Connecticut concerning lands, which provides that the "subscribing of the name of the grantor shall be attested by two witnesses," said:

"But this is an ancient statute, and, as we suppose, has by the profession always been considered as requiring that deeds should be attested by disinterested or competent witnesses, witnesses who could testify in court with respect to the execution upon any controversy that might arise in respect to it."

The case of Child v. Baker, 24 Neb. 188, 38 N. W. 725, decided in 1888, is also cited to the same effect. In that case the law of Nebraska provided that:

"Deeds of real estate * * * executed in this state must be signed by the grantor or grantors * * * in the presence of at least one competent witness."

At that time a provision of the Code of the state relating to evidence provided as follows:

"A person who has a direct legal interest in the suit is not a competent witness unless called on for that purpose by the opposite party."

It was held that a subscribing witness who was the real owner of the title to be evidenced by the deed was not a competent witness under the statute. In both of these states the statutes disqualifying witnesses on account of interest have since been repealed. Wigmore on Evidence, § 488, and note.

The history of the rule disqualifying a witness on account of interest and the abolition of the rule is given in Wigmore on Evidence, §§ 575, 576, et seq. In section 576 the author refers to the abolition of the rule in the United States with this comment:

"The details of the old rule in its application to the numerous circumstances of pecuniary interest may therefore be ignored as having no longer any importance. In every jurisdiction under our law interest as a disqualification is expressly abolished."

In the laws of Oregon from which the Alaska Civil Code and Code of Civil Procedure were taken the disqualification of a witness on account of interest was abolished as early as 1862. The statute is found in B. & C. Comp. § 722. This provision was incorporated in the Alaska Code of Civil Procedure as section 1033, which provides:

"Neither parties nor other persons who have an interest in the event of an action or proceeding are excluded as witnesses."

It follows that the execution of the assignment was valid under the statute, and the objection to its introduction in evidence was properly overruled.

It is assigned as error that the court denied the motion of the defendants made at the close of the testimony to direct a verdict for the defendants. The motion was based upon several grounds, among others the issue raised by the plaintiffs' reply to defendants' answer. In defendants' answer it was alleged that the plaintiffs had surrendered the lease to the defendants, and had abandoned the mining claim, and ceased to prosecute the work thereon for a period of more than 15 days, and had ever since said surrender ceased to work thereon, and had

forfeited thereby all rights, if any they had, which may have been se-
cured by them by said lease. In plaintiffs' reply it was admitted that a
release had been executed by the plaintiffs and placed in the hands of
one T. M. Reed, defendants' agent and attorney, but solely and express-
ly upon the condition that said instrument should be held by said Reed
undelivered until defendants should have executed an agreement with
the plaintiffs to make the lease of the Golden Bull claim to the plain-
tiffs for the term of two years from and after the conclusion of the
contemplated litigation with adverse claimants to a portion of the
claim. It was further alleged that defendants had wrongfully obtain-
ed possession of this release, and had entered into possession of the
released premises. It is now contended by the defendants that plain-
tiffs by their pleading upon that issue were estopped from asserting
any right to the possession of the mining claim until the termination
of the litigation; that, as this litigation was still pending at that time,
the court should have instructed the jury to return a verdict for the de-
fendants. But plaintiffs' reply did not admit the surrender or defend-
ants' right to the possession of the release placed in escrow; nor did
it admit the right of the defendants to the possession of the premises
in controversy. Both of these claims on the part of defendants were
denied by the plaintiffs, and testimony was introduced tending to show
that they were without foundation and without right, and the questions
were submitted to the jury with the following instructions:

"If the defendants satisfy you by a preponderance of the evidence that the
plaintiffs abandoned the claim and surrendered the lease to the defendants,
your verdict should be for the defendants. On the contrary, if the plaintiffs
have established their contention, as set forth in their reply to the defendants'
answer, that T. M. Reed, attorney acting for the defendants, induced the plain-
tiffs to execute a·release of their interest and rights in the lease by repre-
senting to them that it was necessary for them so to do in order that the de-
fendants might successfully prosecute a suit for the recovery of the possession
of a part of the leased ground against Frank H. Waskey and others, who had
taken possession of the same to the wrong, as claimed, of both the defend-
ants herein and their lessees, successors in interest, and assigns, the plaintiffs
herein; that the release was placed in the custody of the said Reed in trust
that he should hold the same until the defendants should execute and deliver
to them an agreement stipulating that a new lease should be given to them
running for a term of two years from the successful termination of the contem-
plated action against Waskey and others, and further stipulating that mean-
time, until the execution and delivery of this agreement to the plaintiffs, the
release should be held in trust, and should be delivered to the defendants only
in exchange for said agreement contemporaneously with the delivery of the
agreement; and that the defendants afterwards wrongfully obtained the re-
lease from said Reed without delivering to the plaintiffs the agreement pro-
vided for in the proposition of Reed to them, and that the defendants, then
taking advantage of their own wrong, took possession of the claim while the
plaintiffs were awaiting fulfillment of the terms of the proposition of Reed,—
then the entry upon the claim by the defendants was unlawful, and the plain-
tiffs should recover in this action, unless the plaintiffs had previously to the
defendants' entry upon the claim abandoned the claim for more than 15 days
without the assent or acquiescence of the defendants, or had in some other man-
ner theretofore released the lessors from the obligations of the lease. * * *
"If the jury find from the testimony that the lease and release of the lease
were left with T. M. Reed to be delivered by T. M. Reed to the defendants up-
on defendants giving an agreement for a new lease, and that the defendants
Schwarz and Halla obtained possession of these papers from T. M. Reed with-
out complying with said conditions, and if the jury further find that, while

said papers were in the possession of T. M. Reed, the plaintiffs were led to believe, and had good cause to believe, from the acts, conduct, or silence of the defendants that the defendants were not then requiring of them a compliance with the terms of said lease and would not claim a forfeiture if they failed to comply with the terms thereof, then the jury are instructed that no forfeiture for failure to comply with the terms of said lease could be claimed by the defendants until they had put plaintiffs upon their guard, and had given notice to plaintiffs that they required of them a compliance with the terms of the lease. * * *

"The jury are instructed that there is no evidence of any authorization of the placing of the lease in suit or of the release thereof which was executed on the part of the plaintiffs in the hands of T. M. Reed, except on the condition set forth in the resolution in evidence by which the plaintiffs, Golden Bull Mining Company, authorized the placing of said documents in the hands of said Reed, namely, that the defendants should execute an agreement to the plaintiffs to execute a lease of the Golden Bull claim to the plaintiffs for the period of two years from the conclusion of the litigation then about to be commenced against adverse claimants thereof, and the jury are further instructed, the undisputed evidence showing that the defendants did not execute any such agreement to execute a new lease, that the placing of said lease and said release thereof in the hands of said Reed has never taken effect as a surrender of the lease."

We are of the opinion that these instructions fairly presented to the jury the questions at issue.

It is further contended that the court should have instructed the jury to return a verdict for the defendants upon the ground that the plaintiffs quit work on the premises in controversy in May, 1906, and thereafter failed and neglected to work and mine the ground for a period of 15 consecutive days during the mining season as required by the lease. There was evidence tending to show that the mining season for this particular character of claim was during the winter, and that the winter work had been performed for this claim. It also appeared from the evidence that B. Schwarz, one of the defendants, was absent from Nome at the time his partners executed the original lease with the plaintiffs on February 26, 1906; that his name was signed to the lease by Otto Halla, one of his partners, without authority; that Schwarz returned to Nome in July, and on September 24, 1906, he signed the lease, the legal effect of which was to ratify the lease as of the date of February 26, 1906. This was also a fact tending to show that the failure of the plaintiffs to work the mine during the summer of 1906 was not understood by the defendants as a cause of forfeiture under the lease, or, if it was, that the forfeiture was waived. There was also evidence tending to show that the conduct of the defendants with respect to this lease and their dealings with the plaintiffs in other respects amounted to a waiver of a forfeiture under the terms of the lease.

We think the question of a forfeiture was properly submitted to the jury for their determination. We have examined the instructions given to the jury by the court, and find no error prejudicial to the defendants' rights. They covered all the appropriate instructions requested by the defendants, and those refused were properly refused.

The judgment of the court below is affirmed.