Powell v. Yeazel.

CLARENCE A. POWELL v. LUEVA YEAZEL, ADMINIS-
TRATRIX OF ABRAHAM YEAZEL, DECEASED, ET AL.

FILED OCTOBER 15, 1895.    No. 5469.

1. **Fraudulent Conveyances:** EVIDENCE OF GOOD FAITH: IN-
STRUCTIONS. In a contest between a vendee of chattels and cred-
itors of one under whom he claims title the evidence tended to
show a purchase for value and in good faith. *Held*, Error for the
trial court in the instructions to characterize the sale as a "pre-
tended sale."

2. **Sales:** POSSESSION OF GOODS: BURDEN OF PROOF. The failure
of a vendee of chattels to take possession thereof does not ren-
der the sale conclusively void as against creditors. It merely
casts upon the vendee the burden of proving his good faith.

3. ———: ———: REPLEVIN: ATTACHMENT: INSTRUCTIONS. There-
fore it is error to instruct the jury that such a vendee cannot re-
cover in replevin from an officer attaching the goods as the prop-
erty of the vendor if the vendee did not obtain possession before
the levy of the writ, although he had no notice of the vendor's
fraudulent intent.

ERROR from the district court of Adams county. Tried
below before CHAPMAN, J.

*Capps & Stevens*, for plaintiff in error.

*Batty & Dungan*, contra.

IRVINE, C.

This action was one in replevin by Powell against Yea-
zel, R. A. Boyd, Fred Einspahr, and George Crane. It
was begun before a justice of the peace, and the property
involved being appraised at an amount beyond the jurisdic-
tion of the justice, the case was certified to the district court.
After a verdict there for the plaintiff, a motion for a new
trial having been sustained, amended pleadings were filed
and the case again tried, resulting in a verdict and judg-

19

ment for the defendants. The property in controversy consisted of forty-four hogs and about twenty head of cattle. The plaintiff claimed this stock by purchase from Anna D. Einspahr. Crane was the sheriff of Adams county and Boyd his deputy. They justified under a writ of attachment sued out by Yeazel against Herman D. Einspahr, the husband of Anna D. Einspahr, claiming to have levied upon the stock by virtue of that writ. The relation of Fred Einspahr to the case seems to be that it was claimed that he had been made custodian of the stock by the deputy sheriff at the time of the levy. The evidence tends to show that the property, prior to January, 1890, belonged to Herman D. Einspahr; that the latter part of January, Einspahr, by bill of sale, conveyed it to his wife. On the one side it is contended that this attempted conveyance was in fraud of Einspahr's creditors. On the other side it is contended that Einspahr being indebted to the Exchange National Bank of Hastings in a large amount and also to Yeazel, its cashier, Yeazel, for the bank and himself, was endeavoring to obtain security for this indebtedness. There is evidence tending to show that certain security was already held, but the details as to this feature are not important, because the effort was being made to obtain a change in the form of the security and also additional security. The security desired was a mortgage on the real estate of Einspahr, including his homestead. In order to procure Mrs. Einspahr's execution of this mortgage, and in consideration of her executing the same, a large amount of personal property, including the live stock in controversy, was transferred to her, and this, it was claimed, was done with the knowledge and consent of Yeazel. It was further contended that on the 6th day of February, 1890, the plaintiff agreed to purchase the live stock in controversy, dealing with Einspahr, and at that time not knowing of Mrs. Einspahr's claim to the property. No sale was then consummated sufficient to answer the re-

quirements of the statute of frauds; but on the following day, February 7, the sale was perfected by the plaintiff's drawing and delivering to Mrs. Einspahr his check for $940, the contract price. The check was delivered between 5 and 6 o'clock of the afternoon of February 7, and was subsequently paid to Mrs. Einspahr. On the 8th most of the hogs were taken into possession by the plaintiff and driven to Kenesaw. At 3 o'clock in the afternoon of the 7th, as shown by the return of the order of attachment, the sheriff attempted to make a levy on the property. The stock was then on the farm of Einspahr. There is evidence tending to show that the levy was regularly declared, but the stock was not moved off the place. Fred Einspahr, who lived on an adjoining farm, was requested by the deputy to take charge of the stock. He objected on the ground that his father was lying ill at his home, and he could not leave; but he was told, as his place was near the stock, he could "keep an eye on it," and prevent others from intermeddling. Herman Einspahr's employes were at the same time directed to feed the stock. On the 8th the sheriff caused the hogs to be returned from Kenesaw to Einspahr's place. On that day the plaintiff was driving the cattle toward Kenesaw when he met the sheriff, who took them out of his possession. There is no evidence that the plaintiff had any actual knowledge of the levy until on the 8th, on his way to take the property into his possession, he was informed by Fred Einspahr that a levy had been made the previous day.

It will be observed that the salient questions in the case are, first, the validity of the levy; second, the *bona fides* of the conveyance from Einspahr to his wife, and third, the *bona fides* of the sale by Mrs. Einspahr to the plaintiff. There was undoubtedly evidence sufficient to go to the jury on the last two issues. It is contended by the plaintiff that the evidence was insufficient to establish a valid levy of an attachment. The record before us does not con-

tain all the instruments which the bill of exceptions shows were offered in evidence, and as the judgment must on other grounds be reversed, we pass this question, simply remarking that this court has held that where an officer attaches property found in the possession of a stranger claiming title, in an action of replevin therefor by such stranger the officer, in order to justify, must not only prove that the attachment defendant was indebted to the attachment plaintiff, but that the attachment was regularly issued (*Williams v. Eikenbery*, 25 Neb., 721; *Paxton v. Moravek*, 31 Neb., 305), and also that the test of the validity of a levy upon personal property is whether or not the acts of the officer under his writ have been such as would make him liable as a trespasser, but for the protection afforded by the writ. (*Grand Island Banking Co. v. Costello*, 45 Neb., 119.)

At the request of the defendants the following instruction was given: "You are instructed as a matter of law that if from the evidence you will find that at the time of the pretended sale of the property in controversy by Herman Einspahr to Anna Einspahr and by her to this plaintiff, there was no immediate delivery to either of them followed by an actual and continued change of possession, and you find that said pretended sale was made with the intention on the part of Herman Einspahr and Anna Einspahr to defraud the creditors of Herman Einspahr, though said fraudulent intent was not known to or participated in by the plaintiff herein, the sale is void as to creditors and you must find for the defendant, unless you further find that plaintiff purchased said property and received possession then or prior to the levy of the attachment, or unless you find that Abraham Yeazel consented to and agreed that such sale and transfer should be made in consideration of Anna D. Einspahr's executing the conveyances referred to in these instructions." We think the learned district judge gave this instruction without sufficiently observing the language

in which it is couched.   It is, we think, in two respects er-
roneous to the prejudice of the plaintiff.   It twice charac-
terizes the sales from Einspahr to his wife and from her to
the plaintiff as "pretended" sales.   The word "pretended,"
used in such a connection, signifies something falsely as-
sumed; something claimed contrary to the truth of the
matter.   The jury could not have understood it in any
other sense.   As we have said, there was evidence justify-
ing the jury in finding that both sales were *bona fide*, and
the court should not have used language importing an as-
sumption that they were not so.   In the next place the
jury was told that if the sale was made with the intention
on the part of either Einspahr or wife to defraud the cred-
itors of Einspahr, the plaintiff could not recover even
though he did not know and did not participate in such in-
tent, unless he actually received possession of the property
before the levy was made.   We take it that the levy of an
attachment upon personal property, like a levy upon real
estate, attaches only to the debtor's interest therein.   A sale
of personal property may be effectual even when over the
value of $50, not only by the delivery of possession of the
property, but by payment of the purchase money or some
portion thereof, or by a memorandum in writing.   The evi-
dence raises some doubt as to the priority in time between
plaintiff's payment for the stock and the levy of the at-
tachment.   Assuming a levy to have been made, the fact
that plaintiff did not receive possession until later would
not necessarily defeat his right.   The failure of the plaint-
iff to obtain possession would in a contest between him and
creditors of the vendor affect only the burden of proof.
(*Fitzgerald v. Meyer*, 25 Neb., 77.)   A sale unaccompanied
by a change of possession is not conclusively void as against
creditors of the vendor.   It only casts upon the vendee the
burden of proving his good faith, and Powell might be a
purchaser in good faith and entitled to the property as
against creditors of Einspahr even if the transfer from

Einspahr to his wife were voidable, and although he did not obtain possession of the property before the levy was made.

REVERSED AND REMANDED.