CHARLES M. PARKER, ADMINISTRATOR, V. JOHN T. WELLS ET AL.

FILED APRIL 22, 1903.    No. 12,662.

1. **Action by Administrator**: DEFENSE: PAYMENT. An account need not be presented to and allowed by the probate court in order to entitle the holder to plead it as payment upon a note made to a party since deceased, provided the deceased in his lifetime agreed that the account should be credited as a payment on the note.

2. ———: COMPETENCY OF WIFE AS A WITNESS. A wife may testify in favor of her husband in relation to conversations and transactions had with a person since deceased in all cases except where the result of the suit, if favorable to the husband, would invest her with some direct legal interest in the subject of the controversy.

3. **Instruction**: EVIDENCE. It is error to submit to the jury as an issue of fact a question material to the case, regarding which there is no evidence to support a finding.

4. **New Trial**: DISTRICT COURTS. The rule acted upon by the supreme court that it will not interfere where the trial court has overruled a motion for a new trial grounded upon the insufficiency of conflicting testimony, does not apply to the district courts. These courts should independently exercise their power in this respect, without restraint from the rule which governs appellate tribunals, and, taking care not to invade the legitimate province of the jury, grant new trials whenever it appears that substantial justice has not been done between the parties.

ERROR to the district court for Lancaster county: ED-WARD P. HOLMES, DISTRICT JUDGE. *Reversed.*

*Willard E. Stewart* and *Allen W. Field,* for plaintiff in error.

*Lionel C. Burr* and *Elmer E. Spencer, contra.*

DUFFIE, C.

Plaintiff in error is administrator of the estate of John E. Haas, who departed this life June 28, 1896. Among other effects of the deceased, the administrator came into possession of a note made by the defendants in error for the sum of $118, drawing interest at the rate of ten *per cent. per annum,* upon which this action was brought.

The answer alleges payment, and sets out four different items of work and labor performed for the deceased in his lifetime at an agreed price, and which, it is alleged, he agreed to credit upon the note; also one cash payment of $25.

The case was submitted to the jury under instructions which we regard as fair to the plaintiff in error so far as relates to the payments thus claimed, and the jury returned a verdict for the defendants.

Carrie E. Wells, wife of one of the defendants in error, was allowed to testify to conversations had with the deceased, over the objections of the plaintiff in error, and it is now insisted that she was incompetent, under the provisions of section 329 of the Code of Civil Procedure, and *Wylie v. Charlton,* 43 Neb. 840, is cited as an authority in support of this contention. That case went to the extent only of holding the wife incompetent as a witness in favor of her husband in an action to establish his title to real estate in which she would have a dower interest. The court said (p. 851):

"In this state a woman by marriage becomes entitled to an inchoate estate of dower in all the land whereof the husband is seized of any estate of inheritance during the coverture. (Compiled Statutes, ch. 23, sec. 1.) This is an interest which, when it once attaches, remains and

continues a charge or incumbrance upon the real estate, unless released by the voluntary act of the wife or extinguished by operation of law. A sale of land under execution upon a judgment against the husband alone will not defeat it. *Butler v. Fitzgerald,* 43 Neb. 192. While the estate thus acquired is not one in possession, it is such a present vested interest of a legal character, and creates such a direct legal interest in an action to establish title in her husband, as falls within the inhibition of section 329. The object of this section was to prevent a party testifying against the representatives of a deceased person, where the interest of such party in the result of the action is of such a character as to hold out a temptation to perjury to such an extent as to run counter to the policy of the law. Surely the acquisition of an estate, even one to take effect *in futuro,* but of such a character as to be recognized at law, and not capable of being defeated by any act of the tenant, presents such an interest. We are aware that at common law it was held that the interest of an heir apparent did not disqualify him, but no one could be the heir of a living person. No present interest was recognized in the heir apparent. His estate might be defeated by the conveyance or will of his ancestor. The law does recognize an inchoate estate of dower and no act of the husband can defeat such estate."

This language makes it clear that it is only in actions involving the title to real estate and where the success of the husband would invest the wife with a present estate of dower in the land involved, that the statute is applicable, or where she can be said to have such a direct legal interest as would disqualify her as a witness.

A further objection is made that the items set out in the answer as a payment on the note were never presented to the probate court as a claim against the estate of the deceased and allowed by the court. If these items were pleaded as a set-off this objection would be good; but such is not the case. The items are set up as payments made upon the note, it being specifically alleged in the answer

that Haas agreed to credit these several items on the note as a payment of so much cash.

One item of work and labor amounting to $22 is alleged to have been done after the death of Haas, at the instance and request of Elmer J. Burkett, the special administrator of the estate at the time.

It appears from a stipulation made between the parties on the trial that Burkett was not appointed administrator of the estate until some months after the alleged agreement and after the work was done. Notwithstanding this state of the record the court in its sixth instruction submitted to the jury the question whether Burkett was administrator of the estate of Haas at the time and whether he made the agreeement as alleged.

The rule is of universal application that it is error to submit to the jury as an issue of fact a question material to the case regarding which there is no evidence to support a finding.

The record entry made by the court on its order overruling the plaintiff's motion for a new trial contains a recital to the effect that where there is any evidence to support the verdict it will not be disturbed. Relating to this matter, we can not forbear quoting from the opinion in *Dewey v. Chicago & N. W. R. Co.*, 31 Ia. 373, 377, with the suggestion that it announces a rule for the guidance of trial courts which should be unhesitatingly followed in all cases. It is as follows:

"We therefore avail ourselves of this occasion to correct what we understand to be a very general misapprehension on the part of district and circuit judges in respect to the rule as to new trials in the *nisi prius* courts. This court has repeatedly declared the rule for itself (and such is the rule in most appellate tribunals), that where the evidence is conflicting and the *nisi prius* court has overruled a motion for a new trial, grounded upon the insufficiency of the evidence, we will not interfere. And this because, first, the jury have found the verdict and given credit to the witnesses on the one side of the con-

flict; second, the judge, who also heard the testimony from the mouths of the witnesses, and weighed the same in the balance of his more cultured and accurate legal judgment, has, by overruling the motion, given his approval and indorsement to the verdict; and third, this court can never have the benefit of observing the conduct and deportment of the witnesses while testifying, nor even the peculiarity of their expressions, but generally only the substance of their testimony and often in the language of the attorneys interested in the cause. A mention of these considerations upon which the rule for the appellate courts is (in part) founded, is sufficient to show that the rule ought not and does not have any application whatever to the *nisi prius* courts. Those courts ought to independently exercise their power to grant new trials, and, with entire freedom from the rule which controls appellate tribunals, they ought to grant new trials whenever their superior and more comprehensive judgment teaches them that the verdict of the jury fails to administer substantial justice to the parties in the case. Whenever it appears that the jury have, from any cause, failed to respond truly to the real merits of the controversy, they have failed to do their duty, and the verdict ought to be set aside and a new trial granted. But while the greatest freedom on the part of *nisi prius* judges should be exercised in setting aside verdicts, in order to secure and effectuate justice, yet judges ought to use caution in the exercise of the power so as not to invade the legitimate province of the jury when they have manifested a fair and intelligent consideration of the evidence submitted to them, nor to injuriously protract litigation in pursuit of invariable and absolute justice in every case, for this can not be attained."

We recommend a reversal of the judgment.

AMES, C., concurs.

ALBERT, C., concurring.

I concur in the conclusion, but I do not think the sug-

gestion from the supreme court of Iowa embodied in the opinion is necessary to a decision in the case, or that it is called for at this time. It seems to me to savor of a license to ignore the verdict of a jury in any case where it does not meet the approval of the trial judge.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

REVERSED.