GEORGE A. ADAMS, ADMINISTRATOR, ET AL., APPELLEES, v. SAMUEL J. DENNIS, SPECIAL ADMINISTRATOR, ET AL., APPELLANTS.

FILED MAY 17, 1906. No. 14,287.

1. **Trusts: JURISDICTION.** The district courts of this state have jurisdiction in cases involving the ownership of property held in trust, though in the possession of and claimed by the administrator of the estate of a deceased person.

Adams v. Dennis.

2. **Deeds: VALIDITY.** "A deed to real estate, executed, acknowledged, and delivered by the grantor, is valid as between the parties thereto and those having knowledge of its existence, although the conveyance be not witnessed." *Pearson v. Davis*, 41 Neb. 608.

3. **Witness: COMPETENCY.** A husband is a competent witness in behalf of his wife in an action brought by her in equity to establish the ownership to property claimed by her and held in trust by the administrator of his mother's estate, he having no direct interest adverse to the administrator.

4. **Evidence** examined, and *held* to sustain the allegations of the plaintiff's petition by a preponderance of the evidence.

APPEAL from the district court for Pawnee county: ALBERT H. BABCOCK, JUDGE. *Affirmed.*

*A. J. Sawyer, Claude S. Wilson* and *L. C. Burr,* for appellants.

*George A. Adams, Stewart & Munger* and *John B. Raper, contra.*

EPPERSON, C.

This is an appeal from the district court for Pawnee county. The record discloses that in an early day one Mary A. Bentley and her husband located on a farm in that county, the title to the land being in the name of the said Mary A. Bentley. These parties had no children of their own, but in 1868 legally adopted a boy, then six weeks old, and gave him the name of William A. Bentley. The adopted son lived with his parents for more than 18 years. On the 9th day of September, 1900, he was married to the plaintiff in this case, Gertrude Bentley. Plaintiff claimed to be the owner of the land above mentioned through a conveyance from Mary A. Bentley and brought this action against the defendant Jun, and others, to have declared fraudulent as to her a conveyance of the land by Mary A. Bentley to Jun, and to have a note and mortgage taken in part payment of the land declared to be the property of the plaintiff, and also for a foreclosure of the mortgage.

On the day of the son's marriage to plaintiff, they visited the mother at her home in Lincoln. The evidence discloses that the mother was well pleased with the son's marriage to plaintiff, and that she was on friendly and intimate terms with them until they departed from Nebraska eight months later. About two weeks after their marriage the son again visited his mother. He testified that at this time she handed him a warranty deed to her farm in Pawnee county, naming plaintiff as grantee therein, and told him to give it to his wife, the plaintiff herein, as a wedding present, but not to record it until after the mother's death. The deed, at this time, was signed by Mary A. Bentley and acknowledged, but not witnessed. When the son examined the instrument, he observed that it was not attested and called his mother's attention to that fact, and thereupon she requested him to sign it as a witness. After witnessing the deed he took it to Omaha and gave it to his wife, who retained possession of it until the trial in the court below. The notary before whom the deed appears to have been acknowledged testified that he was acquainted with Mary A. Bentley, that he signed the acknowledgment, that Mrs. Bentley was in his office to transact some business, and to the best of his recollection it must have been the acknowledgment of this deed. Two disinterested witnesses corroborated the notary as to the acknowledgment of the deed by Mrs. Bentley. About a month after the marriage Mary A. Bentley visited her son and daughter-in-law in Omaha and remained in their home for about a week. While there she made statements to several witnesses to the effect that she had given the farm to Gertrude Bentley as a wedding present. Soon after the mother's visit to Omaha the plaintiff and her husband came to Lincoln and lived with her until April 9, 1901, when they moved to Oklahoma. When Bentley and his wife were thus living with his mother, she went to Pawnee City, and, while there, without the knowledge or consent of plaintiff, sold her farm to the defendant Jun, receiving $1,000 in cash and two notes,

one for $1,100 and the other for $3,000, the latter secured by a mortgage on the land. The son testified that, when his mother returned to Lincoln with the proceeds from the sale of the farm, she promised to and did turn over to his wife the notes, money and mortgage. His testimony is corroborated to some extent by other facts appearing in the record. Mary A. Bentley died May 28, 1901, and Dennis, the special administrator of her estate, appears as a party defendant herein. The district court found for the plaintiff, and decreed that she was the owner of the note and mortgage in controversy, and that the defendants had no right, title or interest therein. Since the decree was entered in the court below, plaintiff departed this life, and the action was revived in the name of her administrator, George A. Adams. Appellants advance several reasons for a reversal of the judgment

1. The first point argued is that the district court for Pawnee county was without jurisdiction to try and determine this cause. Mary A. Bentley's home at the time of her death was in Lancaster county; and at the time this suit was instituted proceedings for the administration of her estate were pending in the probate court of that county. It is argued by defendants that, as the county court has original jurisdiction of all matters of probate and the settlement of the estates of deceased persons, this matter was exclusively within the jurisdiction of that court. This is not an action upon debt, nor an obligation of the deceased, nor otherwise involving the settlement of the estate of Mary A. Bentley, but is an action to determine the ownership of securities and a trust fund, and to foreclose a mortgage of which plaintiff claims to be the equitable owner. The mere fact that the special administrator of Mary A. Bentley contends that her estate is the owner thereof does not bring the matter within the exclusive jurisdiction of the county court. The special administrator, made defendant herein, was in possession of the notes and mortgage in controversy, which it is claimed belonged to the plaintiff, and not to the deceased.

Plaintiff's cause of action would have existed against any-
one in possession. In *Coleman v. McGrew,* 71 Neb. 801,
the court had under consideration a question involving
the disposition of trust funds in the hands of an
administrator, which funds were claimed by a party
to the suit and also by the administrator. OLDHAM, C., in
the opinion says:

"If these funds are assets of the estate, and liable for
the debts of the deceased, then plaintiffs could not
maintain this cause of action, for want of a present
interest in the funds; but, if these funds are held in trust
by the executor for the plaintiffs, their interest is immedi-
ate and the capacity to sue clearly exists. * * * This
(defendant's) objection is based upon the proposition
that the county court has sole and exclusive jurisdiction of
probate matters; but, if we are correct in the conclusion
already reached, the question involved has no connection
with the proceedings connected with the probate of the
will of the deceased. It is simply an application by the
*cestui que trust* to a court of equity for an order restrain-
ing the trustee from misappropriation of his trust funds,
and the jurisdiction of a court of equity to grant this relief
is grounded on the fundamental principles of equity juris-
prudence."

We cannot present a better reason for overruling this
contention of the defendants.

Another suggestion made by defendants on this point
is that the district court for Pawnee county had no juris-
diction because, when this suit was instituted, there was
pending in the county court of Lancaster county against
the estate of Mary A. Bentley the petition and claim of the
plaintiff herein, in which she alleged substantially the
above facts and asked that the special administrator be
required by the court to deliver to her the trust property.
Such proceedings were admitted by the plaintiff, but it
appears that the claim in the county court was withdrawn
before the trial of this cause and that action dismissed
without prejudice. Defendants in their brief refer to the

facts, but do not claim that the proceedings in the county court constituted a bar to this action; and we are of opinion that such proceedings did not deprive the district court of jurisdiction.

2. It is next urged that the deed from Mary A. Bentley to the plaintiff was void because not attested by a competent witness. As hereinbefore stated, the deed, when handed to Bentley, was not attested, but, on the suggestion of the grantor, he affixed his name thereto as a witness. The title of the defendant Jun under his subsequent deed is not assailed in this action, and it is unnecessary to discuss the competency of the grantee's husband to attest the execution of the deed. The rule that as between the parties a deed is valid although not witnessed has been followed in many decisions of this court. *Missouri Valley Land Co. v. Bushnell,* 11 Neb. 192; *Pearson v. Davis,* 41 Neb. 608; *Holmes v. Hull,* 50 Neb. 656; *Prout v. Burke,* 51 Neb. 24. We shall not digress for the benefit of the defendants in this case. Defendants cite *Child v. Baker,* 24 Neb. 188, which, however, is not in point. The deed there considered was acknowledged before a notary public who was the purchaser and the only attesting witness.

3. The testimony of the plaintiff's husband was necessary to enable the plaintiff to recover. Defendants contend that under section 329 of the code he was an incompetent witness, for the reason that the special administrator was an adverse party within the meaning of the law. Section 329 of the code provides: "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness," etc. Plaintiff's husband was his foster-mother's sole heir, and, as such, possessed an interest contingent upon the probate of a will which had been offered, but not yet admitted to probate. Under the proposed will the plaintiff's husband would have a small interest as legatee —$25. This amounted practically to a disinheritance.

But, whether his interest be that of legatee or heir, it is not adverse to the special administrator. Such an interest would be furthered by the special administrator's success and dependent thereon. In *Parker v. Wells*, 68 Neb..647, it is said: "A wife may testify in favor of her husband in relation to conversations and transactions * * * except where the result of the suit, if favorable to the husband, would invest her with some direct legal interest in the subject of the controversy." See also *Hagaman v. Estate of Powell*, ante, p. 514. The plaintiff's success in this action would vest in her certain personal property or money in which her husband would have no direct legal interest, and the evidence admitted, under the circumstances existing at the time of the trial, was competent, and the trial court properly so held.

4. It is earnestly contended by defendants that the evidence fails to establish the alleged gift of the notes and mortgage by Mary A. Bentley to the plaintiff. The testimony of the plaintiff and her husband is to the effect that the notes and mortgage were given to the plaintiff, who took charge of the same and deposited them in a safety deposit vault or drawer in a local bank. This depository was procured for the use of the plaintiff, her husband, and his mother. Each had a key to the same. There the papers remained until a short time before the plaintiff and her husband moved to Oklahoma, when they were taken by the plaintiff and given into the possession of Mary A. Bentley, with the understanding that she was to collect a payment which was expected soon to be made, and, when so paid, she was to bring it to Oklahoma and join the plaintiff and her husband. Defendant's evidence discloses that on April 13, 1901, the notes and mortgage were deposited by Mary A. Bentley with a friend from whom the special administrator obtained them after the death of the said Mary A. Bentley. No written indorsements or assignment of the notes and mortgage were made. Such conduct between strangers would be of great weight in support of the theory that no gift of the securities had

been made and no transfer of title effected, but such conduct is not unusual between members of the same family on friendly terms. If the gift of the land to the plaintiff was made as alleged we need not hold her to the same degree of proof as to the delivery of the notes and mortgage as otherwise we would be compelled.to do. In such case she would be entitled to the securities as equitable owner in the absence of proof of an independent gift thereof to her by the donor.

Defendants further argue that there is inconsistency in the allegations of the petition that there was a gift of the farm, and, later, a gift of the notes and mortgage. We cannot see wherein there is inconsistency in these allegations. It is true that proof of one without proof of the other would be sufficient to entitle the plaintiff to recover, but both pertain to the same matter, and evidence of one would not disprove or discredit the other.

Defendants strongly contend that the evidence indicates that the plaintiff's deed was a forgery, and that the evidence is insufficient to prove a gift of the notes and mortgage. Had the plaintiff's case rested upon the testimony of the Bentleys there would be more reason for this contention. Even though we cannot find any inconsistency in their testimony and have no reason for discrediting their statements, still they testified concerning matters, many of which rest alone within their knowledge. The execution of plaintiff's deed, however, was acknowledged before a notary public, and if the plaintiff and her husband perpetrated a crime the notary was a party to it. This notary was a witness on the trial and related the transaction, not as it would probably be stated by a party to a crime, but as an ordinary honest business man would relate the facts of an every day occurrence. We would be convinced of the truthfulness of his testimony, even though it had not been corroborated, as it was, by two other disinterested witnesses. The deed having been acknowledged, delivery thereof was a natural sequence. Opposing the plaintiff's evidence on this point, we find

the testimony of many expert witnesses who testify that, in their opinion, the signature to the plaintiff's deed was not the handwriting of Mary A. Bentley. Their evidence is conflicting in many details and is opposed by the opinions of two experts called by the plaintiff. Such evidence is not very satisfactory, and we cannot accept the opinions of these experts as against the evidence of the notary, the witnesses corroborating him, and the other facts appearing in the record sustaining the allegations of the plaintiff's petition.

Upon the trial plaintiff called several witnesses who testified to statements made by Mary A. Bentley to the effect that she had given her land to the plaintiff as a wedding present. Such evidence it is claimed by the defendants, was hearsay and incompetent. This opinion is already of considerable length, and a full discussion of this question is unnecessary. Such evidence was proof of admissions by deceased against interest and was competent.

A careful review of the record convinces us that the conclusion of the trial court was right, and we recommend that its judgment be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.