IRVIN R. MOREARTY, APPELLANT, v. CITY OF McCOOK, APPELLEE.

FILED JUNE 1, 1928. No. 25952.

*Bernard McNeny,* and *C. D. Ritchie,* for appellant.

*Perry & Van Pelt, John F. Cordeal,* and *L. H. Cheney, contra.*

Heard before GOSS, C. J., ROSE, DEAN, THOMPSON, EBERLY and HOWELL, JJ., and REDICK and WHEELER, District Judges.

HOWELL, J.

This is an appeal by plaintiff, also appellant, from a judgment against him rendered at the close of his testimony, on the motion of appellee, also defendant, dismissing plaintiff's petition and cause of action.

It is expedient to fix in mind the precise issues involved. Plaintiff's petition alleged: The plaintiff was employed as "consulting engineer" to assist in constructing all pavements and sewers in McCook to be let within one year from June 27, 1925. On that date plaintiff signed a written contract relating to that work, and delivered it to the defendant. About April 9, 1926, defendant signed that contract and delivered a copy to the plaintiff. During the year defendant contracted paving as follows: October 12, 1925, First street job for $126,301.03; January 18, 1926, Second street job for $210,007.64; and March 29, 1926, Third

street job for $197,429.55. Plaintiff performed the work required of him under the terms of the contract as to plans, specifications, estimates, supervision and inspection, and defendant received, accepted and retained the benefits thereof. The October, 1925, contract was completed and accepted July 12, 1926; the January 18, 1926, contract was completed and accepted August 12, 1926; the March 29, 1926, contract was completed and accepted October 11, 1926, by reason of which there was due plaintiff $26,686.86, less payments made to him by the city on November 23, 1925, $867.26, December 28, 1925, $1,910.50, and March 8, 1926, $800. Plaintiff prayed judgment for $23,109.10, interest and costs.

Defendant answered, admitting its incorporation, and denying all other allegations in the petition, and affirmatively alleged: About April 13, 1925, plaintiff accepted an appointment as its city engineer at a salary of $4 a day, for time engaged, but not to exceed $300 per annum. He took the oath of office and continued to be and act as city engineer until April 13, 1926. During all of that year defendant "was entitled to the time, *skill and services of plaintiff* at the salary so agreed upon, and that the *pretended contract and agreement, set forth in plaintiff's petition, was and is against public policy and void.*" Plaintiff was estopped because he disregarded his duties as "such city engineer," by improper advertisements for bids, improper blue prints, divulging information to preferred bidders, preventing competition, unskilful inspection, not requiring skilful work, permitting inferior material, allowing poor labor, causing acceptances of defective work and inferior quality of workmanship. Defendant prayed a dismissal of plaintiff's action, and for costs.

Plaintiff replied by general denial, and alleged that the work done by him was not such as would be performed by an ordinary city engineer; that he expended $14,369.56, in the performance of his contract, for other engineers, inspectors, surveyors and foremen, with the knowledge of defendant; that defendant adopted all plans and had re-

ceived his services and the services of those employed by him, with full knowledge of the details thereof; that the city council employed plaintiff as a "special engineer" to perform the work mentioned in plaintiff's amended petition, and that his compensation for said work was fixed by the defendant at the time of his employment to do said work.

The effect of the foregoing is admission of the contract and avoidance thereof, because plaintiff was city engineer on a salary of $4 a day, not to exceed $300 per annum. The city was entitled to his services as city engineer at the salary named, and "the pretended contract and agreement" was "against public policy and void."

The attempted plea of estoppel defeats itself since it presents conclusions amounting to nothing more than a mere breach of contract. The answer, in effect, admits plaintiff performed work contemplated in the written contract, in that it alleges, in general terms, wherein the performance of his duties were not efficiently complied with. So, in reasoning finally, it can be said the only issues before this court are: (1) Was the contract valid in law? (2) Did the plaintiff substantially perform the services required of him? (3) What sum, if any, is due from the defendant to the plaintiff under the provisions of the contract?

We have examined the record with care and are convinced that plaintiff never was the "city engineer" of the city of McCook on a salary. He performed all the work required of him by the written contract, except making the final estimates and assessments of the cost on benefited properties, which could have been done by him in six to eight days. Such failure affords a foundation for damages easily calculated, and the plaintiff should be paid the contract price for his services, less what was paid him by the city, plus the expenses of making final estimates and assessments. So far as the pavement is concerned, plaintiff fully performed his work, and the pavement was approved by the city and accepted.

The trial court, as shown by the bill of exceptions, stated its reasons for rendering judgment against the plaintiff. Among other things, it was said: "I am satisfied * * * that he (plaintiff) did not accept and never was the city engineer. * * * There is no question but that he did some work, beginning in May or June, 1925." Plaintiff did not complete the work. "He made no valuation of the work done for assessment against the property." We add, he did not make the final estimates for work done by the contractors. "He has founded his case upon a contract. * * * One of the first exhibits was the minutes of the proceedings of the council under date of April 9 (1926). The wording of the resolution * * * was that the mayor be authorized and instructed to sign the contract with the plaintiff * * * indicating by the very wording of it * * * that the mayor was never authorized to enter into any contract * * * prior to that time. * * * The contract became effective as the contract of April 9, 1926; prior to that it was a mere proposition." "He says that he entered into the contract and signed it himself, * * * and (it) was thereafter signed and executed by the defendant. * * * Now, there comes the question of departure and variance. * * * If work was performed prior to that time, and some of it was performed, it was performed without any agreement as to compensation. * * * Now, if he performed without any contract, * * * then, he cannot recover upon this contract at all, but must recover upon *quantum meruit*." We have quoted thus extensively from the statements of the trial court, because it shows the precise question to be decided.

The evidence discloses, without conflict, that, on June 27, 1925, pursuant to prior negotiations, plaintiff signed the written contract in suit, which fixed his compensation and required him to give a $10,000 bond to the city, which recites: "Whereas, said principal has been employed by the city of McCook, Nebraska, as consulting engineer, covering certain paving work, in accordance with this proposal," conditioned that plaintiff shall "comply with all the terms, covenants and conditions of said contract," etc. The bond

was filed with the city authorities and accepted. Subsequent to that time, plans and specifications, blue prints and instructions to bidders were prepared by plaintiff and accepted and used by the city. Later, other and similar plans, etc., were prepared on two additional paving contracts. Those documents cover more than 120 legal size pages of single spaced typewriting. They were all accepted. They related to work aggregating $533,738.22. The three paving jobs were accepted by the city, one on July 12, 1926, and one on August 12, 1926, and one on October 11, 1926.

Plaintiff testified he prepared the plans and specifications, made surveys, set stakes and inspected and supervised all of the paving done. He had four inspectors, two of whom he paid $200 a month, and two $125 and $100, respectively. He also employed the Omaha Testing Laboratories and paid them 3 per cent. per square yard for 150,000 square yards of pavement. He remained at work until in October, 1926—"put in all of my time after June 27, 1925." The mayor testified that all of the city officers knew Morearty was on the job, and that the compensation he was to receive was talked over among them. A city councilman testified that Morearty was doing the engineering work when the contracts for paving were let, drew up the plans and specifications, and looked after the work, having inspectors and chemists employed.

A few days after the mayor signed the contract on April 9, 1926, a new council came into office. While it did not discharge plaintiff, it "just left him alone."

Defendant offered no proof. So far as the record shows, it is barren of any neglect of duty, misconduct or dishonesty on plaintiff's part; nor does it disclose any damage to defendant. There was no fraud in the signing of the contract by the mayor on April 9, 1926. It is fair to assume, from all the facts and circumstances, that a failure to sign the contract at an earlier date was the result of inadvertence or carelessness. If, in truth, the council had orally or tacitly agreed to pay for the services of plaintiff according to the contract terms, it was good morals for the

mayor to sign when he did. The city had received his services and the benefit of large expenditures. Before a party to a contract can deprive another of its benefits, he must plead and prove something more than appears in this case. The record does not even suggest healthy suspicion. Much is said in appellee's brief about the council meeting of April 9, 1926, being a special meeting and illegal.

On April 12, 1926, there was a regular meeting, the minutes of which show that the minutes of the meeting of "April 9 was read and approved." The minutes of October 12, 1925, show the allowance of a bill to plaintiff of $925. It also shows an acceptance of a paving bid for a part of District No. 8, "in accordance with the plans and specifications of I. R. Morearty, city engineer, on file." Another resolution was passed at that meeting, providing for the paving of other parts of District No. 8 "in accordance with plans," etc., "prepared by I. R. Morearty * * * now on file."

July 12, 1926, minutes approved and accepted paving in District No. 8 under the October 12, 1925, contract as "fully completed according to the terms of the plans and specifications" made by plaintiff.

Minutes of January 18, 1926, show contract for paving "in accordance with the plans," etc., "of I. R. Morearty." At the same meeting, it was resolved to pave a part of District No. 8 "in accordance with the plans," etc., "prepared by I. R. Morearty."

Similar minutes appear for March 29, 1926. There are many references, in the minutes, to I. R. Morearty, city engineer.

As to the law, we have little difficulty. It is contended by appellee that complete performance of a contract is a condition precedent to a recovery thereon. The authorities cited do not so hold. Substantial performance is all that is required.

The cases cited by appellee are sound law where applicable. No one will question that one who takes office must perform all official duties for the compensation fixed by

law.   Morearty was not an officer; nor is it doubted that persons contracting with cities are bound to know the limitations of the power of the city to contract.   Nowhere is it claimed in the briefs that the city of McCook had no *power* to contract.   The question is:  Did it contract?  We think it did.   Indeed, there was no issue presented as to the execution or validity of the contract except the allegation in the answer that it was void as against public policy, solely upon the ground that Morearty was an officer of the city and owed all his time and skill to the city for $300 per annum.

In *Standard Bridge Co. v. Kearney County,* 95 Neb. 455, it is held that a county may ratify any contract it has the power to make in the first place.   The contract was written out in full and signed by Morearty on June 27, 1925.   Its terms were never changed.   It was delivered to and retained by the city.   The bond for $10,000 was executed and accepted.   The work was performed under its provisions. The amount Morearty was to be paid for his services was definite.   The city made payments from time to time.   No one was deceived.   Section 4169, Comp. St. 1922, does not require the compensation of employees to be in writing; it may be fixed "at the time" of employment.   Section 4180, Comp. St. 1922, provides for employing a "special engineer" for "improvement of streets," which it may "deem expedient."

In *MacLeod v. City of Washburn,* 178 Wis. 379, it appears that an attorney was employed.   The city council "took no action looking toward the employment."   The council had knowledge of his employment and acquiesced therein by passing a resolution "discontinuing plaintiff's service on behalf of the city."   The court held:  "A municipal corporation may ratify the unauthorized acts and contracts of its agents which are within the scope of its corporate powers, and such ratification is equivalent to previous authority"—quoting from *Koch v. City of Milwaukee,* 89 Wis. 220, 228.

On the question of substantial compliance with the contract, it was held in *Library Board v. Ohlsen,* 110 Neb. 146, that, where a contract for a building has been substantially performed, and "the building was accepted," the measure of damages to the accepter "would be the cost of remedying the defects." See, also, *Craig v. Weitner,* 33 Neb. 484.

For the reasons stated, the judgment of the trial court is vacated and the cause remanded, with permission to defendant, city of McCook, to amend its answer setting up its damages, if any, occasioned by the failure of appellant, the plaintiff below, to make the final estimates and assessments of the cost of the paving in question, if it so desires. Costs will be taxed to appellee.

REVERSED.