IN RE ESTATE OF HARVEY TILTON.
OPAL DODD, APPELLEE, V. HENRY TILTON ET AL., APPELLANTS.

FILED NOVEMBER 15, 1935. No. 29375.

*W. C. Heelan, E. D. Crites* and *F. A. Crites,* for appellants.

*W. B. Quigley* and *J. J. Harrington, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

DAY, J.

In the probate proceedings relating to the estate of Harvey Tilton, Opal Dodd filed a petition of intervention to establish heirship. After a judgment in the county court, an appeal was taken to the district court. Upon a trial to a jury, a verdict was returned finding that Opal Dodd was the daughter and only heir of deceased. Thereupon, an appeal was perfected to this court.

This proceeding had its inception in the filing of a petition by Sarah L. Tilton and Opal Dodd, alleging that Sarah L. Tilton was the widow of the deceased and that Opal Dodd was their only child. At a former trial of this case in the district court, an objection was made to the competency of Sarah L. Tilton, as the surviving spouse, to testify as a witness. At that time Sarah L. Tilton dismissed her petition as follows: "Now comes the intervener, Sarah L. Tilton, widow of Harvey Tilton, deceased, and does hereby release, relinquish and forever disclaims any and all right, title, interest, claim or share in the estate of the deceased; and now for herself and herself only dismisses and moves the court to dismiss this action as to her with prejudice to a further action and at her cost." Thereafter, on the motion of Opal Dodd, a juror was withdrawn and the case continued.

The appellants urge that this dismissal by Sarah L. Tilton and judgment thereon entered in the case are *res judicata* and conclusive upon her copetitioner, Opal Dodd, in all the issues raised in their joint pleading, and especially of the issue that Sarah L. Tilton was the common-law wife of Harvey Tilton, deceased, and that Opal Dodd was the legitimate daughter of Tilton. As to Sarah L. Tilton, the judgment entered upon the dismissal was *res judicata* as to all the issues pleaded. But the issue of paternity of Opal Dodd was not adjudicated thereby. It would be unthinkable that the legitimacy of a daughter could be determined by her mother disclaiming any interest in an estate. The right of heirship of a daughter is not *res judicata* by a judgment entered upon a dismissal and dis-

claimer filed by her mother, where the allegation of the petition is that the mother is the common-law wife of the deceased. There was no adjudication as to the marriage, or the parentage of Opal Dodd. The judgment operated as an estoppel against Sarah L. Tilton to prosecute her claim as widow of the deceased. Opal Dodd was a stranger to that judgment and was not affected by the judgment of dismissal.

Sarah L. Tilton was then produced as a witness for Opal Dodd. Objection was made to her testimony upon the theory that she claimed to be the wife of the deceased and was incompetent under sections 20-1201, 20-1202, and 20-1204, Comp. St. 1929. This objection represents a change in position from the immediate preceding contention that the matter of the marriage was *res judicata,* and that there was a judgment that Sarah L. Tilton was not the surviving widow of deceased.

Section 20-1202, Comp. St. 1929, provides: "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness." Assuming for the time that this is an action against the representative of a deceased person, this statute does not render Sarah L. Tilton incompetent as a witness. The rule is that a party to an action adverse to the representative of a deceased person, who disclaims all interest in the subject-matter of the action and is thereby estopped from asserting any claim thereto, is a competent witness. *Brooks v. Brooks,* 105 Neb. 235. In a recent opinion, *Oft v. Ohrt,* 128 Neb. 848, this court discussed the effect and limitation of this statute. Its reasoning is applicable here and is controlling on this question.

Section 20-1201, Comp. St. 1929, renders incompetent to testify any "husband and wife, concerning any communication made by one to the other during the marriage, whether called as a witness while that relation subsists or afterward." Section 20-1204, Comp. St. 1929, forbids a

husband and wife to testify against each other except in special cases. But it is generally recognized that the state is an interested party to the marriage relationship, and anything which tends to establish the marriage status is not within the meaning of communications between husband and wife. A common-law marriage is alleged to have existed between Sarah L. Tilton and Harvey Tilton.

A common-law marriage is not now valid in Nebraska. *Collins v. Hoag & Rollins,* 122 Neb. 805. But in 1896, when it is alleged that the marriage of Sarah L. Tilton and Harvey Tilton was consummated, a contract made in good faith by mutual agreement to take each other as husband and wife constituted a valid marriage if consummated. *Sorensen v. Sorensen,* 68 Neb. 483; *Coad v. Coad,* 87 Neb. 290. At the time the Tiltons entered into the marriage contract, it was just as valid as a ceremonial marriage and was followed by exactly the same results. Formerly, a man and woman, contractual capables, holding forth to the community by conduct, demeanor, and habits, that they had agreed to be husband and wife constituted a common-law marriage.

There can, however, be no valid marriage without the consent of the state. *Eaton v. Eaton,* 66 Neb. 676. The state has a direct interest in the marriage status and may control and regulate the same. The agreement between parties which establishes a common-law marriage is not a communication between husband and wife concerning which they are prohibited from testifying. It is not within the purview of section 20-1201, Comp. St. 1929. When the conversation occurred which created a common-law marriage, the parties were not husband and wife. The status of marriage followed and was the result of that conversation. Furthermore, it was a public matter, and because of its very nature and its public interest required its revelation. This was no more a communication between husband and wife than the promise and agreement to take as husband or wife of the ceremonial marriage. It was not error to permit Mrs. Tilton to testify in this case after she had

dismissed her claim against the estate, a judgment was entered thereon, and she was estopped to prosecute any right to the estate.

Opal Dodd testified in this case over the objection of the appellants. The basis of the objection was that she was incompetent under section 20-1201, Comp. St. 1929. An examination of the record reveals that her testimony concerned her present status, the place where she was born; where she later lived; that Harvey Tilton was her father; the manner in which deceased treated her, and incidents in her life related to the deceased. It must be remembered that this is an action to establish heirship. Some authorities are cited to the effect that such a statute as ours does not render a party incompetent to testify in such a case. *In re Estate of Maher,* 210 Ill. 160; *McCoy v. Conrad,* 64 Neb. 150; *Matter of Kindberg,* 207 N. Y. 220. But this case may be determined upon other grounds. The testimony of Opal Dodd was cumulative at the most. Even if she was an incompetent witness, it was error without prejudice because the other testimony was such that no other verdict by the jury would have been proper.

The evidence in this case was sufficient to prove a common-law marriage without the testimony of Opal Dodd. In fact, her testimony scarcely touched this question. It appears that Sarah had been married before the common-law marriage with Harvey Tilton. The former husband left her in 1887, and she never saw him or heard from him thereafter. She made numerous inquiries about him. When he left, he said he would hunt work and either come for her or send for her. He drove a team hitched to a wagon. They had no quarrel prior to his departure. This was nine years before her agreement to be the wife of Harvey Tilton. At the time of the trial, she had not heard from him for 47 years. His continued absence has never been accounted for. The unexplained and continuous absence from home for seven years raises the presumption of death. *Holdrege v. Livingston,* 79 Neb. 238; *McLaughlin v. Sovereign Camp, W. O. W.,* 97 Neb. 71. See, also, *Gilroy v. Brady,* 195 Mo.

205. The circumstance of this former marriage is not such as to make the evidence insufficient to prove a common-law marriage. Sarah L. Tilton and Harvey Tilton lived together notoriously as husband and wife for about ten years, during which time a child, Opal Dodd, was born. The evidence tending to prove a common-law marriage is more than usually satisfactory. Under the law as it existed, such a marriage was valid, and a daughter born thereunder is the heir at law of the father.

An examination of this record discloses no prejudicial error requiring a reversal of the judgment.

AFFIRMED.

GOOD, J., concurs in the result.