J. W. O'NEAL, APPELLANT, V. THE FIRST TRUST COMPANY OF YORK, NEBRASKA, A CORPORATION, AS EXECUTOR OF THE LAST WILL AND TESTAMENT AND ESTATE OF IRVING H. LANYON, DECEASED, ET AL., APPELLEES, RONALD KENNETH LANYON, INTERVENER-APPELLEE.

70 N. W. 2d 466

Filed May 27, 1955. No. 33715.

*Philip A. Tomek, John G. Tomek, William E. Tomek,* and *Harry W. Grimminger,* for appellant.

*Hermann G. Wellensiek* and *Kirkpatrick & Dougherty,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, J. W. O'Neal, known generally as Walter or Walt J. O'Neal, brought this action in equity against defendants, The First Trust Company of York, Nebraska, a corporation, as the executor of the estate of Irving H. Lanyon, deceased, and Leroy Davis, trust officer of said corporation. He sought by the action to obtain specific performance of an alleged oral contract entered into by plaintiff and Irving H. Lanyon in the latter part of May 1939, whereby it was agreed that if plaintiff would furnish and supply Irving H. Lanyon with care, labor, services, attention, meals, hired help, transportation, and companionship during Irving H. Lanyon's lifetime, he would leave one-half of all his property to plaintiff. Plaintiff specifically alleged that he had duly performed, furnished, and supplied each and all of such alleged services during the lifetime of Irving H. Lanyon until his death August 23, 1949, and that plaintiff was never recompensed therefor by Irving H. Lanyon, although as indicated

by his last will, executed February 19, 1948, and a codicil thereto executed June 14, 1949, he intended to do so. Ronald Kenneth Lanyon, on behalf of himself and other beneficiaries named in the last will, was permitted to intervene. Insofar as important here, such intervener and defendants filed answers traversing the material allegations of plaintiff's petition, and plaintiff's replies thereto denied generally.

The cause then proceeded to trial of the issues presented, and at conclusion of plaintiff's evidence, defendants moved to dismiss plaintiff's petition because plaintiff had not sustained the burden of proof as required by law in such cases, and that the evidence was insufficient to sustain any judgment against defendants. Thereupon the trial court sustained defendants' motion, saying: "I think you have failed to sustain the burden to prove any contract and I think you have failed to prove by clear and convincing evidence that there was any agreement of any kind." Thereupon the court rendered judgment accordingly for defendants and dismissed plaintiff's petition at plaintiff's cost.

Plaintiff's motion for new trial was overruled and he appealed, assigning that: (1) The judgment was contrary to the evidence and law; and (2) the trial court erred in striking from the record all of the evidence of Nellie J. O'Neal, plaintiff's wife. We sustain the last assignment, but upon trial de novo, under elementary rules with relation thereto, conclude that the judgment should be affirmed.

At the outset plaintiff argued that by its answer defendants admitted the alleged contract, its terms included therein, and performance thereof. Such contention has no merit.

In that connection, defendants, among other things, denied generally, and then alleged in their answer: "For further and separate defense, these answering defendants aver that said *pretended* and *purported* contract is oral with no note or memorandum in writing

and by reason thereof is within the statute of frauds and void." (Italics supplied.)

In Barry v. Barry, 147 Neb. 1067, 26 N. W. 2d 1, this court held: "An admission in an answer does not extend beyond the intendment of the admission as clearly disclosed by its context." In Powell v. Yeazel, 46 Neb. 225, 64 N. W. 695, it is said: "The word 'pretended,' used in such connection, signifies something falsely assumed; something claimed contrary to the truth of the matter." Black's Law Dictionary (3d ed.), p. 1411, cites such latter case and others in defining "pretend" as: "To feign or simulate; to hold that out as real which is false or baseless." Also, as stated in General Talking Pictures Corp. v. Hyatt, 114 Utah 362, 199 P. 2d 147, with reference to a comparable context: "The implication of the word 'purported' is that something is deficient or amiss; everything is not as it is intended to be." See, also, 73 C. J. S., Purport, p. 1259. In the light of the foregoing, we conclude that defendants in their answer did not admit the alleged contract or the terms thereof.

We turn then to plaintiff's contention that under the statute and cited decisions of this court, defendants also admitted that plaintiff performed the terms of the contract. In that regard, he cites and relies upon section 25-836, R. R. S. 1943, Peters v. Wilks, 151 Neb. 861, 39 N. W. 2d 793, and other cases wherein plaintiffs pleaded performance in general terms and defendants relied upon a general denial. In such situations we have held that if defendant relies upon nonperformance as a defense he must allege that fact, and in pleading nonperformance he must allege the facts which constitute the condition and the breach in his answer. Such authorities are clearly distinguishable. Herein, plaintiff did not plead performance in general terms but specifically, item by item, and defendants did not admit the contract or its terms as in Cartwright & Wilson Construction Co. v. Smith, 155 Neb. 431, 52 N. W. 2d

274, and Morearty v. City of McCook, 117 Neb. 113, 219 N. W. 839, 119 Neb. 202, 228 N. W. 367, relied upon by plaintiff. We conclude that under the circumstances presented here, defendants did not admit performance.

The testimony of Nellie J. O'Neal, plaintiff's wife, regarding transactions and conversations with deceased, was stricken by the trial court upon the ground that it was barred by the provisions of section 25-1202, R. R. S. 1943. In doing so we believe the trial court erred. Concededly, all of the real estate belonging to the estate had been theretofore converted into money as provided in the will of deceased, and, as alleged by plaintiff, was held in trust by the executor for the benefit of creditors, legatees, and claimants. As a witness for plaintiff, she testified that deceased never promised to leave her any of his estate, and the record discloses without any fraud or mistake that she affirmatively disclaimed any interest in the subject matter or funds involved. She was not a party in the action and had no direct legal interest in the funds. We have held that even a party to an action adverse to the representative of a deceased person who, without fraud or mistake, disclaims all interest in the subject matter of the action and is thereby estopped from asserting any claim thereto, is a competent witness. Brooks v. Brooks, 105 Neb. 235, 180 N. W. 41; In re Estate of Tilton, 129 Neb. 872, 263 N. W. 217; Goodwin v. Freadrich, 135 Neb. 203, 280 N. W. 917. It is also the rule that a witness is not barred by section 25-1202, R. R. S. 1943, from testifying in such actions wherein the witness is not a party to the litigation and has no direct interest in and will not gain or lose by the result of the suit. Parker v. Wells, 68 Neb. 647, 94 N. W. 717; Nelson v. Nelson, 133 Neb. 458, 275 N. W. 829; Craig v. Seebecker, 135 Neb. 221, 280 N. W. 913. Therefore, in disposing of this case de novo, all competent evidence given by Nellie J. O'Neal will be considered in the same manner as all other such evidence.

We turn finally to the primary question of whether or not the evidence adduced by plaintiff was sufficient to sustain any judgment for plaintiff. We conclude that it was not. In that regard, as recently as Peterson v. Peterson, 158 Neb. 551, 63 N. W. 2d 858, this court, citing numerous cases beginning with Overlander v. Ware, 102 Neb. 216, 166 N. W. 611, held: "Where one is claiming the estate of a person deceased under an alleged oral contract, the evidence of such contract and the terms of it must be clear, satisfactory, and unequivocal.

"Such contracts are on their face void as within the statute of frauds, because not in writing, and, even though proved by clear and satisfactory evidence, they are not enforceable unless there has been such performance as the law requires.

"The thing done, constituting performance, must be such as is referable solely to the contract sought to be enforced, and not such as might be referable to some other and different contract—something that the claimant would not have done unless on account of the agreement and with the direct view to its performance —so that nonperformance by the other party would amount to fraud upon him.

"The burden in the light of this rule has devolved upon the plaintiff to prove (1) an oral contract the terms of which are clear, satisfactory, and unequivocal, and (2) that his acts constituting performance were such as were referable solely to the contract sought to be enforced, and not such as might have been referable to some other or different contract."

Further, as held in Overlander v. Ware, *supra:* "Evidence of declarations of a deceased person, concerning a parol contract, does not amount to direct proof of the facts claimed to have been admitted by those declarations. Such evidence, when not supported by other evidence, is generally entitled to but little weight." We reaffirmed such rule as late as Lunkwitz v. Guffey, 150

Neb. 247, 34 N. W. 2d 256, and therein also held that: "Each case is to be determined from the facts, circumstances, and conditions as presented therein." In the light of such evidence we measure the relevant and competent evidence adduced by plaintiff.

Plaintiff was 62 years old and lived in Grand Island at the time of trial. He had theretofore lived in or near Utica, Nebraska, all of his life while engaged in farming and the handling of livestock. He also sold used cars during 1945, 1946, and 1947. When plaintiff was 16 years old he first met deceased who was a bachelor living with a sister Dolly on his farm south of Gresham. Deceased was a farmer during his lifetime, who raised purebred stock, particularly Percheron horses and Shorthorn cattle. He also raised hogs and bought, marketed, and sold livestock generally. Plaintiff and deceased were good friends for many years. Plaintiff was casually employed by deceased upon several occasions. In the later years, they were partners in the farming and livestock business. They worked together as such, farming, raising, buying and selling crops and stock, keeping up the improvements on the farm owned by deceased, and sharing all expenses, income and profit, on a fifty-fifty basis. At times they had a hired man who "went ahead when we weren't over there, and Walt overseen and it started in '46." Deceased sometimes called plaintiff "the boss." The income from the partnership arrangement is not generally shown. However, it does appear that in 1947 plaintiff's share of the corn crop alone was $5,285.45, and that in 1949 plaintiff got credit at his bank for $4,000, representing his one-half of the corn crop. Deceased left an estate of about $100,000. Upon one occasion deceased, who was in a hospital for a few weeks before his death, gave plaintiff a present of $1,000. At another time deceased gave plaintiff a new Dodge truck. During the years that they worked together plaintiff was kind to and considerate of deceased, an older

partner, and did naturally, because of their friendly partnership relations, perform many favors and services for him, particularly after the death of the sister of deceased in 1945 or 1946, and during the last illness and disability of deceased, who died August 23, 1949.

The intervener took plaintiff's deposition after notice to all parties, and plaintiff offered it in evidence. Therein plaintiff was asked: "Q. During this time, was there any agreement between you and he as to what he was to pay you for those services? A. No. In the latter years, it was in about '44, '45 and '46, why he always said, 'Walt, you're the only one that helps me out, and if you help me out and when I am through with it, you will be more than paid.' Q. More than paid? A. Yeah. * * * Q. Did he say he would give you half of the land, and if so, which half? A. No, he never said half of the land." No objection thereto was interposed, but objections, in reliance upon section 25-1202, R. R. S. 1943, were interposed and sustained to other questions asked plaintiff with relation to transactions and conversations with deceased. The right to make objections at the trial was specifically reserved in the deposition. Plaintiff, who also appeared personally and testified, contended that the taking of the deposition by intervener was a waiver of section 25-1202, R. R. S. 1943. That contention has no merit.

Section 25-1267.06, R. S. Supp., 1953, provides in part: "A party shall not be deemed to make a person his own witness for any purpose by taking his deposition." In Anderson v. Benson, 117 F. Supp. 765, it is said: "Although in some jurisdictions it has been held that the mere taking of a deposition constitutes a waiver of the 'dead man's' statute, it is difficult to interpret the mere taking of a deposition as a waiver in Nebraska because of the clear words of the statute." In Pink v. Dempsey, 350 Ill. App. 405, 113 N. E. 2d 334, it is said, after citing authorities: "It is our conclusion that the incompetency of the claimant was not waived by the

taking of a discovery deposition." See, also, Bentley v. Estate of Bentley, 72 Neb. 803, 101 N. W. 976. We conclude that the taking of a deposition before trial by a representative of a deceased, at which time he examined or cross-examined the witness, is not a waiver of disqualification within the meaning of section 25-1202, R. R. S. 1943, and appropriate objections thereto may still be raised at the trial.

Mrs. Nellie J. O'Neal, plaintiff's wife, testified in person at the trial with regard to declarations allegedly made by deceased, who said "that Walter had always taken care of him and done things for him, and for him to go ahead and do the work, because after he was through that half of it would go to him * * * Half of the estate would go to Walter * * * that Walter was doing it, and when he was through with it, half of the estate was Walter's * * * That half of the estate would be Walter's * * * that Walter was the only one that would look after him, that half of the estate would be his after he was done with it." In a deposition offered by plaintiff, she testified that deceased said, when they were out on the farm working: " 'Walt' * * * 'My boy has been so good to me, this is all going to be his. He is fixing it up for himself. When I am through with it it will all be his.' * * * 'I am going to show my appreciation by leaving it to you. * * * I have nobody else to leave it to.' " After plaintiff had been ill in 1948 and wanted to farm the place for himself in 1949, deceased said: " 'No, you have got all you can do to take me where I want to go and look after me.' * * * 'You go ahead and do just like you did.' * * * 'You hire the help and oversee it, and I will give you half of the crop.' " On October 4, 1950, such witness admittedly gave counsel a complete statement, but never mentioned anything about having any alleged agreement with deceased, and she did not remember that at that time she and plaintiff said " 'Mr. Lanyon never talked about his estate, or his intentions with regard to his estate.' " For further an-

swer she said "We never knew how much Mr. Lanyon —he never told us how much money he had * * * He never did, never" tell them how much property he had. She was asked: "Q. You made no claim to the land. A. No sir, we never inquired a thing about it. * * * Q. At the time Mr. Lanyon died, was he indebted to you on anything, or Mr. O'Neal? A. No, sir. Q. He didn't owe you a dime, everything had been squared? * * * A. Uh-huh. * * * Q. By that you mean it was a settlement as to the partnership relationship, and the business relationship, isn't that right? A. That's right. * * * You and Walter didn't file any claim against the estate? A. That's right, we never. * * * Q. And when Mr. Lanyon was in the hospital, do you know whether he informed or apprized (sic) Walter that he made a will for him whereby he would be paid what he agreed to pay him? A. Yes, I think he made a remark that he would get well repaid for what he had done."

Plaintiff's sister and several friends of both plaintiff and deceased testified with regard to claimed generalized declarations, made by deceased to them and others during the last 10 years of his lifetime. However, generally speaking no definite times were actually fixed showing when such declarations were made. To repeat them here at length would serve no purpose. It is sufficient for us to say that they were simply evidence of testamentary intention, having no relation to any proved legal agreement which could be binding on deceased or his estate.

In the meantime, on February 19, 1948, after most or all of said declarations were allegedly made, deceased executed a last will and testament giving and bequeathing six cash legacies to named legatees. The plaintiff was not named therein as a legatee and no provision whatever was made therein for him. Paragraph X of the will provided: "All the rest, residue and remainder of my estate I bequeath to my *legatees aforesaid* to be divided among and between them *pro rate,* and if my

estate shall not be sufficient to pay all of said legacies in full, they shall in like manner be ratably diminished in amount." (Italics supplied.) On June 14, 1949, before his death August 23, 1949, deceased executed a codicil to his will, wherein he cancelled and revoked two such legacies provided for in his will. The codicil then said: "I give and bequeath to J. W. O'Neal a legacy of $4,000." Both the will and codicil were admitted to probate in the county court, but upon appeal therefrom to the district court and trial to a jury whereat contestants asserted want of mental capacity to make the will and codicil, the jury returned a verdict sustaining the will but finding against validity of the codicil because deceased lacked mental capacity to make it. The executor and plaintiff herein appealed from the finding and judgment that the codicil was invalid for want of mental capacity. We affirmed that judgment in First Trust Co. v. Lanyon, 156 Neb. 21, 54 N. W. 2d 262, primarily upon the ground, as claimed by contestants in their cross-appeal, that proponents of the codicil had not made a prima facie case within the meaning of the rule that a proponent is required to present all attesting witnesses if their testimony is available.

It is now contended by plaintiff that the legacy bequeathed to him in the codicil, when construed in the light of the residuary clause X in the will duly admitted to probate, is evidence that deceased contracted to give plaintiff at least four-ninths of the net value of his $100,000 estate. That contention has no merit.

As we view it, the codicil was of no force and effect for any purpose. It was as if it had never been made. Under the circumstances presented here, any failure of plaintiff to prove execution of the codicil and obtain its admission to probate was not a mistake which could permit him to now recover by virtue of any provision therein. 19 Am. Jur., Equity, § 72, p. 87. Further, assuming for purpose of argument only that it did have any force and effect as evidence, it simply indicated a testamen-

tary intention to bequeath plaintiff a legacy of only $4,000. Plaintiff was not one of the *legatees aforesaid* named in paragraph X of the will, which disposed of the residue to them, and the codicil did not by use of any language include plaintiff therein. The general rule is that dispositions of a will should not be disturbed by virtue of a codicil except insofar as it is necessary for the purpose of giving effect to the codicil within rules of law and that a codicil does not operate as a revocation of testamentary provisions beyond the clear import of its language. See, Lightfoot v. Beard, 230 Ky. 488, 20 S. W. 2d 90; Annotation, 123 A. L. R. 1404.

We conclude that plaintiff failed to prove the alleged oral contract by clear, satisfactory, and unequivocal evidence. The declarations of deceased were simply evidence of testamentary intention, having no relation to any proved legal contract. Further, we conclude that the alleged acts of performance were not such as were referable solely to the alleged contract. They were referable as well to the contractual partnership relation of plaintiff and deceased.

For reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed. All costs are taxed to plaintiff.

AFFIRMED.